John W. SMITH, Plaintiff and Appellant,

v.

MOUNTRAIL COUNTY, a duly organized County in North Dakota; Edward Will, Alan Miller, Trustee, Charles R. Fox, Bruce Cabot, J. J. Cohn, Hayes Goetz, Walter Bruington, J. S. Abercrombie, Edward Dannewitz, F. B. Taylor, Flora Walter, and all other persons unknown, claiming to have any right, title interest in or lien or encumbrance upon the property described in the Complaint, Defendants and Respondents.

No. 7489.

Supreme Court of North Dakota.

April 19, 1955.

Rehearing Denied June 6, 1955.

Hyland, Foster & Conmy, Bismarck, for plaintiff and appellant.

Ella Van Berkom, Minot, for defendants and respondents Edward Will and Edward Dannewitz.

Cox, Pearce & Engebretson, Bismarck, for defendants and respondents J. S. Abercrombie and Charles R. Fox.

JOHNSON, Judge.

This action is brought in statutory form, Section 32–1704, NDRC 1943, to determine adverse claims. The action involves the East Half of the Northwest Quarter (E½NW¼) and the West Half of the Northeast Quarter (W½NE¼) of Section 26, Township 157 North of Range 94 West of the 5th P.M., Mountrail County, North Dakota.

The defendant, Edward Will, answered separately alleging ownership of the East Half of the Northwest Quarter (E½NW¼) and the Southwest Quarter of the Northeast Quarter (SW¼NE¼) of Section 26, Township 157, Range 94, and sets forth that his source of title is derived from a tax deed from Mountrail County, dated December 20, 1943. He further alleges that his title was adjudicated by the District Court of Mountrail County, North Dakota, resulting in judgment filed and docketed on the 31st day of August, 1944; that he has placed improvements on the land consisting of fencing, removing rocks, and breaking the land, of the aggregate value of $500 and prays for judgment in

that amount in the event that the plaintiff prevails.

Edward Dannewitz answered separately, alleging his ownership of the Northwest Quarter of the Northeast Quarter (NW¼-NE¼) of Section 26, Township 157, Range 94. Dannewitz obtained his title from Edward Will by warranty deed dated December 12, 1947, and he alleges that he has been in open and notorious possession of the premises since that date.

The defendant Charles R. Fox answers separately and states that he has a valid and subsisting royalty interest in and to the premises under and by virtue of an oil and gas lease dated August 10, 1949, made, executed and delivered by Edward Will, a single man, to Alan Miller, Trustee, covering the premises described in the plaintiff's complaint, which lease was for a term of ten years from date and as long thereafter as drilling operations are continued; that thereafter on March 7, 1950, Alan Miller, Trustee, for value, conveyed a ⅟₆₄th of ⅝th royalty interest in and under said lease to this defendant.

The defendant, J. S. Abercrombie, answered separately and alleges that he has a valid and subsisting leasehold interest in the premises described in the plaintiff's complaint under and by virtue of the oil and gas lease made, executed and delivered by Edward Will, dated August 10, 1949, to Alan Miller, Trustee, and covering the premises described in the plaintiff's complaint, which lease was for a term of ten years from said date and as long thereafter as drilling operations were conducted, as provided in said lease; that thereafter and on May 15, 1951, said oil and gas lease was for value sold and assigned to the defendant by Alan Miller individually and as trustee for himself, Bruce Cabot, J. J. Cohn, Hayes Goetz and Walter Bruington, as beneficiaries.

All of the instruments referred to in the answers have been recorded in Mountrail County, North Dakota, the county in which the land is situated.

Separate replies were made to the answers filed by the above mentioned defendants. It is unnecessary to set forth the contents of these replies. None of them allege any affirmative defenses or other grounds of relief included within the scope of Section 32–1709, NDRC 1943.

The trial court determined that the quiet title action maintained by Edward Will adjudicated the adverse claims of Clent Smith and his successors in interest, Alice M. Smith and John W. Smith, as parties to said action under the designation of "all other persons unknown". Upon this determination by the trial court, judgment was entered decreeing that Edward Will was the owner in fee simple of the premises described as the East Half of the Northwest Quarter (E½NW¼) and the Southwest Quarter of the Northeast Quarter (SW¼NE¼) of Section 26, Township 157 North, Range 94, subject to existing oil and gas leases made, executed and delivered by Edward Will on said premises. It was further decreed and determined that Edward Dannewitz was the owner in fee simple of the premises described as the Northwest Quarter of the Northeast Quarter (NW¼-NE¼) of Section 26, Township 157, Range 94, subject to existing oil and gas leases made and executed by Edward Dannewitz upon the premises.

The plaintiff appeals and demands a trial de novo.

He makes two contentions: First, that the judgment in the previous quiet title action of Edward Will, plaintiff, v. Axel Pearson, Civil No. 3600, in the District Court of Mountrail County, which judgment was entered August 31, 1944, covering the lands in controversy in the case at bar and other lands, is subject to collateral attack for the reason that the plaintiff was not a party to said action, and was not served as a person unknown; and, Second, that the tax title proceedings are fatally defective by reasons of the absence of a certificate of tax sale.

Mountrail County issued a tax deed by its County Auditor to itself as a municipal

corporation, dated October 1, 1941, and filed January 27, 1942, at 9 a. m., covering the premises involved in this action and other lands. Thereafter it sold the land to Edward Will, by tax deed dated December 20, 1943, and filed for record March 4, 1944. The tax deed covers the land in question as well as other land. On the 19th of April, 1944, Edward Will, one of the defendants in this action, commenced an action as plaintiff against Axel Pearson and others to quiet the title to the land involved in this action as well as other land. The summons states that the complaint will be filed in the Office of the Clerk of the District Court in and for Mountrail County, North Dakota, and there is subjoined to the summons a notice signed by the plaintiff's attorney containing a description of the land to which the action relates, which includes the land involved in this action. Section 32-1707, NDRC 1943. The title to the action covers several named defendants and also "all persons unknown claiming any estate or interest in, or lien or encumbrance upon the property described in the complaint."

On August 29, 1951, Alice M. Smith, the mother of the plaintiff, by warranty deed conveyed the premises involved in this action to the plaintiff. The present action was commenced on March 17, 1952. The deed to the plaintiff was recorded in Mountrail County, February 29, 1952, or less than three weeks before the commencement of this action. Alice M. Smith was made a party plaintiff in this action, but it would appear she had no interest in the property at the time of the commencement thereof. This action was tried on the 4th day of September, 1953, in the city of Stanley, Mountrail County, North Dakota. At that time, Alice M. Smith was deceased. The plaintiff's attorney moved to have her name stricken from the title and this motion was granted. This action, therefore, is being carried on by John W. Smith as plaintiff and appellant.

Attached to the summons and complaint in the action of Edward Will against Axel Pearson and others, and known as Case No. 3600 in Mountrail County, North Dakota, is attached a Sheriff's Return—Defendants Not Found. This return recites:

"that the summons and complaint in the above entitled action came into my hand for service upon the following named defendants on the 22nd day of April 1944, to-wit: (and then it names all of the named defendants and refers to all persons unknown, etc., then goes on to say) That after making diligent inquiry for the purpose of serving the said summons and complaint, I am unable to make personal service thereof upon said defendants, or any of them; that such inquiries consisted in part of making inquiries from persons who have lived in the vicinity of the land described in the summons for the past 15 or 20 years, such men as James Dolan, an ex sheriff of Mountrail County, Albert L. Dannewitz, Hans Thronson, Adolph Thoen and others all of White Earth, N. Dak., and in making inquiries at the office of the register of deeds, clerk of the district court, and county judge of Mountrail County, N. Dak; That each and all of the persons from whom inquiries were so made expressed their opinion that said defendants were not now residents of the State of North Dakota, or that they had never heard of them."

This return is dated April 26, 1944, and signed by Ira Wooster, Sheriff of Mountrail County, North Dakota.

The affidavit for service of summons by publication is signed by the attorney for the plaintiff, Edward Will, and dated the 26th day of April, 1944, and states with reference to unknown persons:

" '* * * and all persons unknown claiming any estate or interest in, or lien or encumbrance upon the property described in the complaint,' in the land described in the complaint are not shown of record in the office of the register of deeds, the clerk of the district court or the county auditor of Mountrail County, N. Dak., the county in which the said land lies, and affiant

does not know and is unable to ascertain the names, residences or postoffice addresses of any of the persons who are proceeded against as unknown persons defendants;"

The affidavit for publication of the summons further recites that the relief sought in the action consists wholly in excluding the defendants, and each of them, from any interest in, or lien upon specific real property within the State of North Dakota, which said real property is described in the complaint.

The summons, complaint, sheriff's return of defendants not found and the affidavit for service of summons by publication were filed in the office of the clerk of the district court of Mountrail County on April 26, 1944. The first publication of the summons was had on April 28, 1944. The summons was published for six consecutive weeks in the Mountrail County Promoter, a weekly newspaper of general circulation published in the city of Stanley, the county seat of Mountrail County.

The defendant Will pleads the action in which he was plaintiff against Axel Pearson and others in bar of this action. The plaintiff in this action, John W. Smith, did not procure any interest in the property until his mother, Alice M. Smith, deeded the same to him on August 29, 1951.

If Clent Smith, the predecessor in interest of the plaintiff in the present action, properly comes within the designation of "all persons unknown", the court had jurisdiction to determine any adverse claims which he may have had to the property involved in the action. Alice M. Smith and John W. Smith, his successors in interest, are, therefore, bound by any valid judgment obtained against Clent Smith as an unknown person.

The first question for determination, therefore, is whether or not Clent Smith, the predecessor in interest of the plaintiff in the present action, was an "unknown person" defendant within the meaning of our statutes, and whether jurisdiction was obtained over him in said action. The

judgment in said action was recorded in the office of the register of deeds of Mountrail County, North Dakota, the same date as it was obtained.

It will be noted that the action of Edward Will, plaintiff, against Axel Pearson, et al., was commenced by the issuance of a summons on the 19th day of April, 1944, and completed by entry of judgment and the recording thereof on August 31, 1944.

The evidence discloses that the Federal Land Bank of St. Paul obtained a sheriff's deed to the premises involved in this action on the 22nd day of March 1930 and filed for record on the 17th day of April, 1930, in the office of the register of deeds of Mountrail County, North Dakota.

The plaintiff, John W. Smith, claims his source of title from Clent Smith. Clent Smith obtained a quitclaim deed from the Federal Land Bank of St. Paul, Minnesota, dated June 28, 1937. This deed was filed for record in the office of the register of deeds, Mountrail County, North Dakota, on February 20, 1945, or five months and twenty days after the conclusion of the action by Edward Will quieting title to the land involved in this action.

Clent Smith gave a quitclaim deed to Alice M. Smith, dated May 13, 1946, and filed June 28, 1946, in the office of the register of deeds, Mountrail County, North Dakota. Alice M. Smith gave a warranty deed to John W. Smith, the plaintiff in this action, on the 29th day of August, 1951, which was recorded in the office of the register of deeds, Mountrail County, North Dakota, on the 29th day of February, 1952.

Thus the record title did not disclose any interest in the plaintiff, John W. Smith, or his predecessors in interest, Clent Smith, his father, nor Alice M. Smith, his mother, until after the quiet title action by Edward Will against Axel Pearson had been completed. The deed of Alice M. Smith from her husband, Clent Smith, appeared of record one year, nine months and twenty-seven days after the completion of the quiet title action of Edward Will against Axel Pearson et al. The deed from Alice M.

Smith to John W. Smith appears of record less than a month prior to the institution of the present action.

■ The trial court found as a fact that the parents of John W. Smith, Clent Smith and Alice M. Smith, were not residents of the State of North Dakota between the 22nd and 26th day of April, 1944; that they had moved to Big Fork, Montana, in 1940, where they remained, except for occasional visits to White Earth, North Dakota. It further found as a fact that the land in controversy was idle when sold by Mountrail County to Edward Will; that Edward Will was in possession of the land involved in this action at the time he brought his action to quiet title. It further found that at the time that Edward Will purchased the land it was not fenced or improved, nor was there anything to indicate any farming activity, or that anyone claimed any right to the ownership or the use thereof. It further found that the interest of Clent Smith and his successors in interest, to wit, Alice M. Smith and John W. Smith, if any, was neither disclosed by the public records nor through acts of possession, and that facts did not exist which would put a prudent inquirer on notice with reasonable means of ascertaining the identity or whereabouts of either Clent Smith or the plaintiffs (referring apparently to John W. Smith and Alice M. Smith, who at the time of this action was deceased.) The evidence in this case amply bears out these findings of the trial court.

The plaintiff himself testified that Charles Baumgart, who had been both a tenant and a hired hand of Clent Smith, farmed the land for the last time, he thought, in 1942. The defendant Edward Will testified that when he bought the land it was covered with weeds. There had been a house on the land, but it was moved off the premises sometime prior to 1941. The plaintiff was uncertain as to the exact date, but he was certain that it was prior to 1941. The plaintiff admitted that he never said anything to Mr. Will about owning the land. The plaintiff knew Edward Will and admitted that he never discussed having any

claim or interest in this land with him. Edward Will testified that he was acquainted with Clent Smith during his lifetime, also with his wife, and with the son, John W. Smith; that during the entire time from September 1943 up to the time of the litigation in the case at bar, neither Clent Smith, Alice M. Smith, nor John W. Smith, told him that they had an interest in this land. He further testified that the first time he knew that the Smiths claimed any interest in the land was when the "papers" in this action, the summons and complaint, were served on him. Edward Will had dealings with Clent Smith in 1944 and at that time he made no claim to this land.

■ The trial court concluded as a matter of law that the quiet title action instituted by Edward Will against Axel Pearson adjudicated the adverse claims of Clent Smith and those who succeeded him to the title to the premises involved under the designation of "all unknown persons." With that conclusion we agree.

A close examination of the record in the action of Edward Will against Axel Pearson, Civil No. 3600, maintained in the District Court of Mountrail County, discloses that it was conducted in strict compliance with the requirements of Chapter 32–17, NDRC 1943.

The factual situation here is somewhat different than in the case of Bartell v. Morken, N.D., 65 N.W.2d 270. But, insofar as that case deals with unknown persons, it determines the law applicable here. That case was also a quiet title action. Niels C. Larson of Viborg, South Dakota, became the owner of the premises involved in that action by a warranty deed dated December 31, 1929. On December 8, 1931, the property was sold to Mountrail County for non-payment of taxes for the year 1930. On May 21, 1938, tax deed was issued to Mountrail County. This tax deed was void for various reasons. Mountrail County went into possession of the land and leased it to Selmer Morken. On March 4, 1946, the county executed and delivered a deed to Morken who continued in possession. On May 4, 1951, Selmer Morken instituted

**524**

an action to determine adverse claims to the property against:

> "Niels C. Larsen, his unknown heirs or devisees if deceased; and all other persons unknown claiming estate or interest in or lien or encumbrance upon the property described in the complaint herein, defendants."

On August 8, 1951, judgment was entered in that action in the district court of Mountrail County determining that Selmer Morken was the owner in fee simple of the premises involved and further determining that the interests of all defendants were quieted and that they were forever debarred from any and all claims of right or title to the said premises, or lien or encumbrance upon said premises.

Niels C. Larsen died May 7, 1931. Bertha L. Bartell, the plaintiff in the action, filed an affidavit showing that she and her brother were the children of Niels C. Larsen, deceased. The purpose of the affidavit was to establish that Bertha L. Bartell was an heir of the record title owner, Niels C. Larsen, and therefore entitled to maintain the action. The main issue in that case was whether the plaintiff could maintain a collateral attack upon the former judgment and whether valid service was obtained on the heirs of Niels C. Larsen as unknown defendants.

 This court determined in an opinion written by Chief Justice Morris, that the action maintained by Selmer Morken and concluded on August 8, 1951, was binding on the plaintiff, Bertha L. Bartell and was a bar to the relief that she sought in the action, and further, "That judgment determined defendant Selmer Morken to be the owner of the land and is binding on the court in this action." This court thus found that Bertha L. Bartell was properly served in the action as an unknown person; that the court had jurisdiction; that the action maintained by her was barred by the quiet title action of Selmer Morken.

The present action of John W. Smith to determine adverse claims against Edward Will and others is a collateral attack upon the former judgment of Edward Will against Axel Pearson et al. Bartell v. Morken supra, and authorities therein cited. It was conducted in strict compliance with the requirements of Chapter 32–17, NDRC 1943, and the affidavit for publication of the summons conforms to all the requisites of Section 32–1707, NDRC 1943. Jurisdiction, therefore, was obtained over Clent Smith as an "unknown person" which adjudicated his rights in the property involved in the action at bar. Alice M. Smith and John W. Smith, his successors in interest, who obtained deed through him after said action had been concluded, are bound by that judgment.

The sheriff's return of defendants not found goes beyond the requirements of Subsection 4, Section 28–0620, NDRC 1943, in that it refers to inquiries made by plaintiff's attorney. While the recitals are not required by statute, they show the diligence and the effort to ascertain the rights of all interested parties in the land prior to the institution of the action of Edward Will against Axel Pearson and others, case number 3600.

When Edward Will maintained his action to quiet title against Axel Pearson and others, the property was not fenced or improved. There was no activity on or connected with the land. The evidence amply bears out that he had no knowledge of any claim of ownership by Clent Smith, his wife, or John W. Smith. The interests of the plaintiff were neither disclosed by the public record nor by acts of possession, and no facts in this record are shown which would put a prudent inquirer on notice with reasonable means of ascertaining that Clent Smith, Alice M. Smith, or the plaintiff, John W. Smith, had any interest in the property involved. Clent Smith was an "unknown person" in the action to quiet title instituted by Edward Will to the premises involved in this action. Stewart v. Berg, N.D., 65 N.W.2d 621.

In view of our determination that the quiet title action of Edward Will against Axel Pearson et al. was effective to exclude

any interest of Clent Smith in the premises involved in this action and is binding on his successors, it becomes unnecessary to determine whether there were any defects in the tax title procedure leading*up to the tax deed to Mountrail County. These defects, if any, have been adjudicated in the Will quiet title action. The determination of the trial court in that action is binding on the court in this action.

The judgment appealed from is affirmed.

BURKE, C. J., and GRIMSON, MORRIS and SATHRE, JJ., concur.

### On Petition for Rehearing.

The appellant has filed a petition for rehearing in which he indicates that this court overlooked the law pronounced in the case of Roberts v. Enderlin Investment Co., 21 N.D. 594, 600, 132 N.W. 145. We carefully examined the above case referred to before the opinion was prepared, but did not deem it applicable to the facts involved in the case at bar.

The Roberts case shows that the affidavit for publication of the summons was filed on August 12, 1908; that the first publication of the summons was on the 14th day of August, and the sheriff's return was made and filed on the 25th day of August, thirteen days after the affidavit was filed and eleven days after the first publication of the summons, and after the summons had been twice published. The summons was only published four times after the sheriff's return was filed. The court held in that case that this was not a sufficient compliance with the statute to confer jurisdiction on the court to enter any judgment against the defendant in absence of any appearance by him in the action. It further held that by the great weight of authority, the rule is that statutes providing for service of summons in any other manner than by personal service must be complied with and strictly followed to render effective an attempted service of summons by publication.

In the case at bar the facts show that the summons and complaint came into the hands of the sheriff for service on the 22nd day of April 1944; that the sheriff made his return on the 26th day of April 1944; that the affidavit for service of summons by publication was signed by the plaintiff's attorney on that date and that the summons, complaint, sheriff's return and affidavit for service by publication were all filed on the 26th day of April 1944. There was strict compliance with the requirements of the statute.

The appellant refers to the following statement made in the Roberts case:

> "The statute requires, in such cases, that the inquiry by the sheriff for the purpose of serving the summons be made prior to the making and filing of the affidavit."

It is interesting to note that the above quoted statement from the North Dakota Report does not appear in the same language in the decision as reported in 132 N.W. 145. At page 147 thereof, for some unknown reason, the official report of the decision as contained in the North Dakota Report was changed to read:

> " * * * he (the sheriff) is unable to make personal service thereof, requires that such return of the sheriff, for the purpose of serving the summons, *be made prior to the making and filing of the affidavit.*" (Emphasis supplied.)

We know of no statute that requires that the *inquiry* of the sheriff for the purpose of making and serving the summons be *made* prior to the *making* of the affidavit.

The pertinent question involved is simply what does Section 28–0620(4) require? It requires that when an affidavit for publication of the summons shows that personal service cannot be had upon a defendant in this state to the best knowledge, information, and belief of the person making the affidavit, such affidavit must be accompanied by a return of the sheriff of the county in which the action is brought stating that after diligent inquiry for the purpose of serving such summons, he is un-

able to make personal service thereof upon such defendant. This return must be filed with the affidavit. When this has been done the requirements of the statute have been met. The sheriff's return, of necessity, must be made prior to the filing of the affidavit since the statute requires that the affidavit be accompanied by the return. The presumption would be that the inquiry was made prior to the filing of the affidavit when, as here, the facts show that the sheriff had the summons and complaint in his possession for four days prior to making his return. Strict compliance with all the statutory requirements invoked the jurisdiction of the court in the action of Edward Will to quiet title against Axel Pearson, et al.

The judgment entered in that action cannot be collaterally attacked in this action.

The petition for rehearing is denied.

BURKE, C. J., and JOHNSON, GRIMSON, MORRIS and SATHRE, JJ., concur.